UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

            v.                          Crim. Action No. 1:09-cr-64-2

Jeremy D. Zullo

## REPORT AND RECOMMENDATION
(Doc. 1240)

Defendant Jeremy D. Zullo, proceeding *pro se*, has filed a Motion Under

28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.  (Doc. 1240.)  Zullo was

convicted in this Court following his pleas of guilty to one count of conspiring to

distribute and to possess with the intent to distribute marijuana and five kilograms or

more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A); one count of

possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C.

§ 924(c)(1)(A); and one count of money laundering in violation of 18 U.S.C. § 1957.

(Docs. 320, 486.)  Attorney Ian Carleton represented Zullo in proceedings before this

Court from May 26, 2010 until December 13, 2012.  Attorney Randa D. Maher

represented Zullo in the Court of Appeals on the government's successful appeal of

Zullo's sentence.  Zullo was permitted to represent himself at his August 15, 2013

resentencing hearing, with Attorney Michael Shklar serving as standby counsel.

In his § 2255 Motion, Zullo now argues that Attorney Carleton provided ineffective assistance of counsel.  (Doc. 1240.)  Zullo has also filed a Supplemental Memorandum, arguing that the Court misinformed him of his total sentence exposure at his change-of-plea proceeding.  (Doc. 1247 at 3.)  The government opposes Zullo's Motion, arguing that his claims are either meritless, forfeited, or have been decided on direct appeal by the Second Circuit.  (Doc. 1267.)  Attorney Carleton has filed an affidavit in response to Zullo's factual assertions, pursuant to an order of this Court. (Doc. 1254.)  Zullo filed a Reply on April 14, 2015.  (Doc. 1274.)[1]

For the reasons set forth below, I recommend that Zullo's § 2255 Motion (Doc. 1240) be DENIED.

## Background

### I.     Indictment

In mid-June 2009, Zullo was arrested pursuant to a warrant and charged with distribution of cocaine in violation of 21 U.S.C. § 841(a)(1).  *See* Indictment, *United States v. Zullo*, No. 1:09-cr-68 (D. Vt. June 17, 2009), ECF No. 9.  Attorney Carleton was assigned to represent Zullo pursuant to the Criminal Justice Act.  *See* Appointment, *Zullo*, No. 1:09-cr-68 (June 22, 2009), ECF No. 11.  This initial charge was later consolidated in a larger indictment when on January 13, 2010, a grand jury returned a Second Superseding Indictment charging 16 individuals, including Zullo, with numerous drug and firearm violations.  (Doc. 163.)  The Second Superseding Indictment charged Zullo

---

[1]  Zullo's 23-page Reply exceeds the 10-page limit in Local Rule 7(a)(5)(B), but I have considered the Reply nonetheless.

and others with conspiring to distribute marijuana and five kilograms or more of cocaine, 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A) ("Count 1"), possession of a firearm in furtherance of a drug trafficking offense, 18 U.S.C. § 924(c)(1)(A)(i) ("Count 16"), money laundering, 18 U.S.C. §§ 2, 1957 ("Count 27"), and counts concerning several substantive drug-distribution offenses, 21 U.S.C. §§ 841(a)(1), 846.  (Doc. 163.)

## II.   Zullo's Statutory Sentencing Exposure

At the time that Zullo's case was pending, his total statutory sentencing exposure was not a settled area of the law and therefore some preliminary discussion is warranted. Zullo was convicted after pleading guilty to Count 1 (conspiracy) and Count 16 (firearms).[2]  Count 1 carried a mandatory minimum term of imprisonment of 10 years, 21 U.S.C. § 841(b)(1)(A), and Count 16 carried a mandatory minimum term of imprisonment of five years, 18 U.S.C. § 924(c)(1)(A)(i).  (Presentence Report ("PSR") ¶ 103.)  In addition to the mandatory minimum penalties set forth in § 924(c), that section also provides, in relevant part, that "no term of imprisonment imposed on a person under [18 U.S.C. § 924(c)(1)(A)(i)] shall run concurrently with any other term of imprisonment . . . for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed."  18 U.S.C. § 924(c)(1)(D)(ii).

In 2009, the Second Circuit held that the mandatory minimum sentence required by § 924(c) was inapplicable where a defendant was subject to a longer mandatory minimum sentence for a drug trafficking crime that is part of the same criminal

_____

[2]  As noted above, Zullo was also convicted of money laundering (Count 27), which carried a term of not more than 10 years' imprisonment, 18 U.S.C. § 1957.

transaction or set of operative facts as the firearm offense. *See United States v. Williams*, 558 F.3d 166, 170 (2d Cir. 2009) (citing *United States v. Whitley*, 529 F.3d 150 (2d Cir. 2008)) (holding that § 924(c)(1)(A)'s mandatory minimum provision does not apply where "any other provision of law" already subjects the defendant to a higher mandatory minimum). On January 25, 2010, while Zullo's case was pending in this Court, the Supreme Court granted a writ of certiorari in *Abbott v. United States*, a consolidated appeal from the Third and Fifth Circuits. *See Abbott v. United States*, 559 U.S. 903 (2010); *Gould v. United States*, 559 U.S. 903 (2010). *Abbott* presented the same issue addressed by the Court of Appeals in *Williams* and *Whitley*: whether § 924(c) requires the imposition of consecutive mandatory minimum sentence on a § 924(c) violation where the underlying drug trafficking crime also requires the imposition of a mandatory minimum sentence. *Abbott v. United States*, 562 U.S. 8, 13 (2010).

## III.    Plea Agreement and Change-of-Plea Proceeding

Attorney Carleton's affidavit reveals that prior to his pleas of guilty, Zullo and Carleton engaged in extensive discussions concerning the indictment, the charges contained therein, and the effect of the *Abbott* case pending in the United States Supreme Court at that time. (Doc. 1254.) Carleton also discussed the benefits that might accrue to Zullo if he were to cooperate in the pending investigation, an idea that Zullo "rejected out of hand." (*Id.* at ¶ 4.) Carleton states that Zullo clearly understood the implications of the pending *Abbott* case on his situation. Attorney Carleton performed a sentencing guideline calculation, which included consideration of the issues raised by the *Abbott* case. (*Id.* at ¶ 11.) Carleton reviewed his calculation at a meeting with Zullo.

Consistent with Zullo's wishes, Carleton later conveyed to the government the fact that Zullo had no interest in cooperating in the investigation.  Carleton's affidavit reveals that the government prosecutors expressed concern that Zullo did not understand the implications of his decision.  Carleton advised the government that "[a]fter significant additional discussion of the issue with both . . . Zullo as well as his family, I write to let you know that Mr. Zullo is still not interested in talking with the government.  Accordingly, please forward a proposed plea agreement at your earliest convenience." (*Id.* at ¶ 14.)

A plea agreement was sent to Carleton which required Zullo to plead guilty to the charged conspiracy count, the firearms count, and the money-laundering count.  The proposed plea agreement was accompanied by the prosecutor's statement of an intent to pursue a five-year sentence on the § 924(c) violation which was consecutive to the sentences for the conspiracy and money-laundering counts.  (*Id.* at ¶ 15.)  Attorney Carleton sent Zullo a copy of the plea agreement to review and then met with him again on April 21, 2010 to review it with him and to discuss the agreement in person.  (*Id.* at ¶¶ 16–17.)  According to Carleton, he documented Zullo's understanding of each paragraph of the agreement by having Zullo initial each paragraph after the paragraph was discussed.  (*Id.* at ¶ 17.)

On April 29, 2010, the written plea agreement was filed wherein Zullo agreed to plead guilty to Counts 1, 16, and 27 of the Second Superseding Indictment, and the government agreed to dismiss the remaining charges.  (Doc. 308.)  Paragraph 2 of the plea agreement expressly provided that Zullo "understands, agrees and has had explained

to him by counsel that the Court may impose . . . a *consecutive* 5-year mandatory minimum term of imprisonment, pursuant to 18 U.S.C. § 924(c)" together with the 10-year mandatory minimum term for the drug-conspiracy charge.  (*Id.* at ¶ 2 (emphasis added).)  For its part, the government agreed, among other things, to move to dismiss the remaining counts of the Second Superseding Indictment, and to recommend that Zullo receive credit for acceptance of responsibility under Guideline § 3E1.1.  (*Id.* at ¶ 6.)  The plea agreement did not contain any limitation on the government's ability to file an appeal challenging the imposition of a concurrent sentence for the § 924(c) violation.

On May 26, 2010, Zullo appeared in the district court to enter his plea of guilty to Counts 1, 16, and 27, as outlined in the plea agreement.  (Doc. 320.)  A review of the transcript reveals that United States District Judge J. Garvan Murtha conducted the complete colloquy required by Rule 11 of the Federal Rules of Criminal Procedure.  (Doc. 623.)  At the change-of-plea hearing, Zullo answered affirmatively to the Court's inquiries as to whether he had seen a copy of the Second Superseding Indictment, and whether Zullo had "told Mr. Carleton everything [Zullo knew] about the facts and circumstances behind these charges so that he [was] able to give [Zullo] appropriate advice."  (Doc. 623 at 3.)

The Court read each count of the Indictment aloud and then reviewed the essential elements of each offense, asking in each instance whether Zullo understood the elements the government would have to prove at trial.  (*Id.* at 4–7.)  The Court then asked AUSA Nolan to describe the facts the government would seek to prove, which AUSA Nolan stated, in relevant part, as follows:

From at least early 2006 until his arrest on June 16, 2009[,] Jeremy Zullo participated in a drug distribution ring led [by] John Orlando Brooker, Junior in the greater Rutland, Vermont area.

. . . .

Zullo regularly received large quantities of powder cocaine from Brooker and distributed the cocaine in smaller amounts to others.

Brooker's organization distributed as much as 2 kilograms of cocaine each week, large amounts of marijuana and unknown amounts of crack and prescription pills.  The total amount of cocaine distributed by the Brooker organization during Mr. Zullo's involvement far exceeded 5 kilograms.

Between August[] 2008 and May[] 2009 ATF and DEA used a confidential informant and or undercover agent to make 12 controlled purchases from six Brooker organization conspirators buying a total of 444 grams of cocaine for just under $20,000.

The transactions were conducted pursuant to standard protocols and were surveilled by agents and audio and or video recorded.  Among the transactions was an April 2, 2009 controlled purchase by an undercover ATF Agent from Zullo of 55.8 grams of cocaine for $2,800 in Rutland.

On June 16, 2009 agents arrested nine of the conspirators and searched their residences.  The searches resulted in the seizure of 970.3 grams of cocaine from the residences of Zullo and co-conspirators Zachary Grand and Michael Ross, Junior, including 108.4 grams of cocaine from Zullo's bedroom.

The DEA Lab has confirmed that the seized and purchased substances are cocaine in the amounts stated.

During the course of the conspiracy defendant Zullo possessed firearms in furtherance of the drug trafficking conspiracy.  He regularly carried firearms on his person and in his vehicle to protect himself, his drugs and his drug proceeds while engaged in the transportation and distribution of drugs.

Among such firearms were two seized from Zullo on June 16, 2009.  A loaded FEG PA-63, 9 by 18 caliber pistol . . . which was seized from

Zullo's bed. And a loaded Ruger P35 . . . seized from the center console of defendant Zullo's Land Rover.

A third such firearm, a loaded Taurus Ultralight 38 caliber revolver . . . was seized from defendant Zullo's person by Rutland City Police during a December 29, 2008 traffic stop. Defendant Zullo also acquired firearms through trading of cocaine.

(*Id*. at 7–9.)

The Court asked Zullo whether the facts recited by AUSA Nolan were true, to which Zullo, under oath, responded, "Yes, Your Honor." (*Id*. at 10.) The Court then turned its attention to the term of imprisonment Zullo faced by pleading guilty. The Court ascertained that Zullo understood that Count 1, the five kilogram cocaine conspiracy, required the imposition of a 10-year mandatory minimum sentence. (*Id*. at 11.) With respect to the § 924(c) sentencing issue, the following exchange occurred:

The Court: And Count 16 the maximum sentence could be not more than or up to a consecutive term of life imprisonment under 18 U.S. Code, Section 924(c), a consecutive five year mandatory minimum term of imprisonment under 18 U.S. Code, Section 924(c) and not more than a five year period of supervised release and not more than a $250,000 fine and a $100 special assessment. Do you understand that?

Zullo: Yes, Your Honor.

. . . .

The Court: So my understanding is Mr. Zullo pleads to, in effect, a 15 year mandatory minimum; is that right?

Zullo: Yes, Your Honor.

Nolan: That is a possibility, Your Honor. That's correct. And we wanted to make the Court aware of the fact that right now the Second Circuit law is that a five year mandatory penalty in 924(c) is, falls away, is

not consecutive. However, the Supreme Court has before it, not a case from the Second Circuit, but other cases from other circuits raising that issue. We expect a decision by July 1st.

That may change the Second Circuit position or confirm what the law is. So there's a distinct possibility that the defendant faces a mandatory 15 years here if there's no decision, if, if the Supreme Court deferred decision, that's for re-argument, did something like that, just didn't decide it before Mr. Zullo's sentenced.

As the parties have discussed the government would expect to argue that the five year mandatory penalty is consecutive though the understanding that the Court would be obligated to follow the Second Circuit rule, but in essence reserving the issue for further review in light of whatever [t]he Supreme Court pronouncement is that eventually comes.

The Court: All right. And, Mr. Carleton, do you agree with that?

Carleton: I do. That's a correct statement of the law. *I've discussed this with Mr. Zullo. And he's fully aware of the somewhat uncertain state of whether or not 924(c) will be consecutive or concurrent.* It certainly puts some pressure on having this case sentenced. We also had discussions with probation about that. I understand that there's a lot more to be done.

I think even under expedient circumstances we can't say if this happens before we expect a U.S. Supreme Court decision. It is certainly our hope to –

The Court: But, in any case, it is at least a 10 year mandatory minimum?

Carleton: Yes, Your Honor.

The Court: Okay. . . . And you understand that, Mr. Zullo?

Zullo: Yes, Your Honor.

(*Id*. at 11–13 (emphasis added).) Zullo also responded affirmatively when the Court

asked, "you've had enough time to talk over anything you wish with Mr. Carleton

. . . ? Anything about the evidence against you, the plea agreement you signed, today's

proceeding, sentencing guidelines, anything else?" as well as "[y]ou are satisfied with Mr. Carleton's representation and advice?" and "do you feel it is in your best interests to plead guilty?" (*Id*. at 21.)  The Court accepted Zullo's pleas of guilty finding they were entered into freely and voluntarily by Zullo, with a full understanding of the charges against him, that the pleas were free of coercive influences, with an independent basis in fact. (*Id*. at 23.)

## IV.    Sentencing and Government's Appeal

Prior to sentencing a Presentencing Report was prepared by the Probation Office and submitted to the Court.  The PSR concluded that with respect the advisory Sentencing Guidelines, Zullo faced a sentencing range of 97 to 121 months.  (PSR ¶ 105.)  However the PSR noted that the mandatory minimum sentence required by § 841(b)(1)(A) required a sentence of 120 months.  The report also took note of the decision in *Williams* and concluded that the § 924(c) firearm violation should be imposed to run concurrently to the conspiracy and money-laundering offenses.

Prior to sentencing each side filed memoranda to aid the Court in the sentencing process.  On behalf of Zullo, Attorney Carleton filed a memorandum seeking the imposition of a sentence of not greater than 120 months, arguing the *Williams* decision compelled the conclusion that the sentence on the § 924(c) firearm count was to be imposed to run concurrently.  (Doc. 475 at 2.)  The government sought the statutorily required 120-month sentence on the drug violation, a concurrent sentence for the money-laundering violation, and urged the Court to impose a consecutive 60-month sentence for the § 924(c) firearm violation.  (Doc. 473.)  Acknowledging the *Williams* holding, the

government argued that the *Williams* holding was erroneous.  (*Id.* at 8–10.)
Alternatively, the government sought an upward departure from the applicable sentencing
guideline range pursuant to USSG § 5K2.6, asserting Zullo's possession of a weapon for
an extended period of time and during the course of a particularly dangerous conspiracy
supported the adjustment.  (*Id.* at 19–22.)

        On October 19, 2010, the Court held Zullo's sentencing hearing.  (Doc. 485.)
Attorney Carleton renewed his argument advanced in his written memorandum and
argued that Zullo should be sentenced to 120-months' imprisonment on the drug-
conspiracy count with concurrent sentences on the firearm and money-laundering counts.
(Doc. 475 at 1; Doc. 528 at 3.)  As noted above, the government sought consecutive
sentences for the firearm offense, arguing that the Second Circuit's decisions in *Williams*
and *Whitley* did not comport with the law and would be reversed in *Abbott*.  (Doc. 473 at
5–19.)  In the alternative, the government argued that the offense level for the drug-
conspiracy count should be increased by two levels, pursuant to USSG § 2D1.1(b)(1),
and that the Court should grant its motion for upward departure and upward variance to a
168-month term of imprisonment to account for the use of firearms in furtherance of the
conspiracy, pursuant to USSG § 5K2.6 and 18 U.S.C. § 3553(a).  (*Id.* at 19.)

        The Court performed an advisory sentencing guidelines calculation.  Grouping the
conspiracy and money-laundering counts, the Court concluded that the base offense level
was 32, increased by one level because Zullo was convicted under 18 U.S.C. § 1957, and
decreased by three levels for acceptance of responsibility for a total offense level of 30.

(Doc. 528 at 25.)  With respect to the firearms count, the Court concluded that the guideline sentence was the five-year minimum term.  (*Id.* at 25–26.)

The Court concluded that Zullo had no criminal history points, resulting in a criminal history category of I.  (*Id.* at 26.)  The Court noted that the guideline range for an offense level of 30 and a criminal history category of I is 97–121 months, but that in light of the 10-year mandatory minimum for the conspiracy count, the guideline range was 120–121 months.  (*Id.*)  Although the Court denied the government's request for a two-point dangerous-weapon enhancement on the drug-conspiracy count, it granted the government's motion for an upward departure from the 120-month sentencing guideline range pursuant to USSG § 5K2.6, increasing the term of imprisonment by six months to 126 months.  (*Id.*)  In sum, the Court sentenced Zullo to 126 months on Count 1 (conspiracy), 60 months on Count 16 (firearms), and 120 months on Count 27 (money laundering).  (*Id.*)  In accordance with *Williams* and *Whitley*, the Court made the sentence on each count to run concurrently with each other.  (*Id.*)

The government appealed the Court's decision to impose a concurrent sentence for the § 924(c) violation.  (Doc. 519.)  On November 15, 2010, the Supreme Court issued the *Abbott* decision, abrogating *Williams* and *Whitley*.  The Court held that a defendant was subject to a consecutive sentence for possessing a firearm in connection with a drug trafficking offense under § 924 despite also facing a higher mandatory minimum sentence for separate counts of conviction.  *Abbott*, 562 U.S. at 13; *see also United States v. Tejada*, 631 F.3d 614, 619 (2d Cir. 2011) (acknowledging that *Abbott* abrogated *Williams* and *Whitley* and applying *Abbott* to pending appeal).

On December 22, 2011, the Second Circuit vacated Zullo's sentence and remanded the case for resentencing in accordance with *Abbott*. *United States v. Brooker*, No. 10-4764-cr, 2011 WL 11068864, at *1 (2d Cir. Dec. 22, 2011).

## V.       Resentencing and Zullo's Appeal

On January 29, 2013, the Court granted Zullo's request to appear *pro se* during the resentencing proceedings and appointed Attorney Michael Shklar to serve as standby counsel.  (Docs. 1128, 1142.)  Prior to sentencing Zullo moved to dismiss the Second Superseding Indictment, asserting: (1) that he received ineffective assistance of counsel; (2) that the Indictment failed to properly alleged the offenses of conviction; and  (3) there was insufficient evidence to support the § 924 (c) conviction.  (Doc. 1160.)  On May 28, 2013, the Court denied Zullo's Motion.  (Doc. 1189.)  The Court concluded (1) that the Indictment properly tracked the statutory language, and (2) Zullo's challenge to the evidence supporting the § 924(c) firearms conviction and his claim of ineffective assistance of counsel were beyond the scope of a motion to dismiss.  (*Id.*)

On May 31, 2013, Zullo filed a Notice of Interlocutory Appeal (Doc. 1190), which the Court construed as a request for permission to appeal; and the Court denied the Notice due to the absence of a final, appealable judgment (Doc. 1191 at 2).  Zullo then moved to reconsider the ruling denying his Motion to Dismiss, and on August 8, 2013 the Court denied that Motion.  (Doc. 1199.)

On August 15, 2013, Zullo appeared at the resentencing hearing with Attorney Shklar.  (Doc. 1201.)  The Court sentenced Zullo to a total term of 180-months' imprisonment, with the drug-conspiracy and money-laundering terms of 120 months

running concurrently and the 60-month term for the § 924(c) conviction running consecutively.  (Doc. 1202 at 2.)  The Court also sentenced Zullo to five years' supervised release.  (*Id*. at 3.)  Zullo filed a Notice of Appeal.  (Doc. 1203.)  On October 24, 2014, the Second Circuit affirmed the Court's ruling, concluding that the Second Superseding Indictment adequately alleged the offenses of conviction and that Zullo waived his right to challenge venue when he entered a guilty plea.  *United States v. Zullo*, 581 F. App'x 70, 71 (2d Cir. 2014).

## VI.  Zullo's § 2255 Motion

Zullo filed his § 2255 Motion on November 14, 2014.  (Doc. 1240.)[3]  He argues that Attorney Carleton provided ineffective assistance of counsel by failing to: (1) adequately explain the law, the application of the law to the facts, the potential consequences of pleading guilty, and the potential length of his sentence, and by failing to object to the government's reservation of a right to appeal; (2) ensure that Zullo entered a knowing, intelligent, and voluntary guilty plea by failing to explain to Zullo that he would not benefit from the three-level credit for acceptance of responsibility under the Sentencing Guidelines; (3) assert that the indictment was defective, and (4) explain the elements of 18 U.S.C. § 924(c)(1)(A) and the meaning of the term "in furtherance of" as required by the statute.  (Doc. 1240.)  Zullo has also filed a Supplemental Memorandum raising an additional claim based on Fed. R. Crim. P. 11, arguing that the Court erred

---

[3]  Also pending before the Court is Zullo's Motion for Retroactive Application of Sentencing Guidelines to Crack Cocaine Offense (Doc. 1255), filed pursuant to 18 U.S.C. § 3582.  That Motion is not before me.

when it failed to adequately explain the elements of 21 U.S.C. § 846 at the change-of-plea hearing.  (Doc. 1247.)

**Discussion**

## I.      Section 2255 Standard

Under 28 U.S.C. § 2255, a federal prisoner may collaterally attack his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States."  "[A] § 2255 motion is not a substitute for direct appeal," and courts "will not afford collateral review to claims that a petitioner failed properly to raise on direct review unless the petitioner shows (1) good cause to excuse the default and ensuing prejudice, or (2) actual innocence."  *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012); *see Bousley v. United States*, 523 U.S. 614, 622 (1998); *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011).  Furthermore, it "is well settled that a defendant's plea of guilty admits all of the elements of a formal criminal charge, and, in the absence of a court-approved reservation of issues for appeal, waives all challenges to the prosecution except those going to the court's jurisdiction."  *Hayle v. United States*, 815 F.2d 879, 881 (2d Cir. 1987) (citation omitted).

Alternately, a defendant is permitted to raise claims based upon ineffective assistance of counsel in a § 2255 motion.  "To raise a claim despite a guilty plea or appeal waiver, the petitioner must show that the plea agreement was not knowing and voluntary because 'the advice he received from counsel was not within acceptable standards.'"  *Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) (citation omitted) (quoting *United States v. Torres*, 129 F.3d 710, 715–16 (2d Cir. 1997)).

## II.     Rule 11 Claim

I begin with the Rule 11 claim raised in Zullo's Supplemental Memorandum. Federal Rule of Criminal Procedure 11 provides that, "the court must inform the defendant of, and determine that the defendant understands . . . (G) the nature of each charge to which the defendant is pleading." Fed. R. Crim. P. 11(b)(1)(G); *see also United States v. Journet*, 544 F.2d 633, 634 (2d Cir. 1976) (District Court must inform defendants "of each and every element enumerated in Rule 11"). Zullo argues that at his May 26, 2010 change-of-plea hearing, the Court "committed plain error by failing to adequately explain . . . the elements of conspiracy (21 U.S.C. § 846), but instead merely recited what the government had charged in Count 1 of the Second Superseding Indictment." (Doc. 1247 at 2.) He contends that he did not understand the nature of the offense to which he pleaded guilty. (*Id.*) He further asserts that his "lack of information was material to his decision to plead guilty." (Doc. 1247-1 at 5.)

"In general, a defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal." *Thorn*, 659 F.3d at 231. The general rule of procedural default also applies to claims alleging Rule 11 violations. *See Lucas v. United States*, 963 F.2d 8, 12 (2d Cir. 1992). Here, since Zullo failed to raise his Rule 11 claim on direct appeal, it is necessary to determine whether the claim "rises to a level that would justify a collateral attack on the judgment of conviction." *Id.* To justify such a collateral attack, Zullo must establish "that the violation constituted a 'constitutional or jurisdictional' error, . . . or . . . that the error resulted in a 'complete miscarriage of justice' or in a proceeding 'inconsistent with the rudimentary demands of

16

fair procedure.'"  *Id.* at 12–13 (citation omitted) (quoting *United States v. Timmreck*, 441 U.S. 780, 783, 784 (1979)).  Zullo also must establish prejudice, demonstrating that he "did not understand the consequences of his plea, or that, if he had been properly advised, he would not have pled guilty."  *Id*. at 13.

"[W]here, as here, the fairness of the entire procedure is at issue, a court is not limited to the plea allocution itself, but may consider the entire record in order to determine whether a miscarriage of justice has occurred."  *Tsang v. United States*, 749 F. Supp. 72, 77 (S.D.N.Y. 1990) (citing *Bachner v. United States*, 517 F.2d 589, 598 (7th Cir. 1975) (Stevens, J., concurring)).  The Court examines whether "the record as a whole illustrates that the defendant understood the crimes to which he pled guilty." *Tineo v. United States*, 977 F. Supp. 245, 255 (S.D.N.Y. 1996) (collecting cases).

Here, Zullo has failed to show any Rule 11 violation, let alone one that amounted to a constitutional or jurisdictional error or resulted in a complete miscarriage of justice. The Second Circuit affirmed the Court's ruling that the Second Superseding Indictment in this case appropriately stated the § 846 offense.  *See Zullo*, 581 F. App'x at 71.  Zullo also answered affirmatively when asked whether he had seen a copy of the Second Superseding Indictment, and whether he had "told Mr. Carleton everything [Zullo knew] about the facts and circumstances behind these charges so that he [was] able to give [Zullo] appropriate advice."  (Doc. 623 at 3.)

Zullo points out that conspiracy is a "somewhat complicated crime." (Doc. 1247-1 at 2 (quoting *Irizarry v. United States*, 508 F.2d 960, 965 (2d Cir. 1974).) But in determining whether the defendant understands the nature of the charges to which

he is pleading, a court need not "deliver to the defendant the equivalent of a jury charge." *United States v. Saft*, 558 F.2d 1073, 1079 (2d Cir. 1977).  Rather, courts must provide "sufficient notice," which can be accomplished in "various ways."  *Frederick v. Warden, Lewisburg Corr. Facility*, 308 F.3d 192, 197 (2d Cir. 2002).  Here, as in *Frederick*, Zullo received sufficient notice.

First, Judge Murtha's recital of the Second Superseding Indictment (Doc. 623 at 4:1–16) provided notice, making it clear to Zullo that he was charged with acting and agreeing with others to possess and distribute illegal drugs.  As in *Frederick*, it is unclear "what sort of elaboration would have enhanced in any significant measure [Zullo's] understanding of the conspiracy charge."  *Frederick*, 308 F.3d at 197.

Second, Judge Murtha went on to recapitulate the elements of the conspiracy charge in his own words.  Specifically, Judge Murtha advised Zullo that, for the government to prove Zullo's guilt on the conspiracy charge, it would have to prove that Zullo was:

> part of this conspiracy that's alleged in Count 1, that the conspiracy involved the distribution and possession with the intent to distribute cocaine, which is an illegal substance.  And marijuana, which is also an illegal substance, that you knowingly and intentionally became part of this conspiracy, and that the conspiracy involved the distribution of at least or more than 5 kilograms of cocaine.

(Doc. 623 at 4:20–5:3.)  Zullo agreed on the record that he understood that those were the elements that the government would have to prove on Count 1.  (*Id.* at 5:4–7.)

Third, the Court specifically asked AUSA Nolan to describe the facts the government would seek to prove at trial.  (*Id*. at 7–10.)  That recital of facts (set forth in

large part, *supra*) "added factual flesh to the bones of the charge," *Frederick*, 308 F.3d at 197, and further provided Zullo with notice.  Zullo expressly admitted that the facts recited by the government were true.  (Doc. 623 at 10.)

Finally, Zullo also received notice through the plea agreement, which recited the conspiracy charge.  (*See* Doc. 308 at 1, ¶ 1.)  Zullo confirmed in that agreement that he understood the nature of the charges.  (*Id.* at 8, ¶ 19.)  Judge Murtha also specifically asked Attorney Carleton whether he had discussed with Zullo the charges and every paragraph of the plea agreement, to which Attorney Carleton replied: "Extensively." (Doc. 623 at 21.)  In his affidavit, Carleton states that he fully advised Zullo concerning the law governing his case and that Zullo acknowledged to Carleton an understanding of the law.  (Doc. 1254 at 11.)  For all these reasons, Zullo has failed to show any Rule 11 violation, let alone one that amounted to a constitutional or jurisdictional error or resulted in a complete miscarriage of justice.

Zullo also cannot show prejudice.  He supplies only a bare allegation that the Court's "lack of information was material to his decision to plead guilty."  (Doc. 1247-1 at 5.)  Even if Zullo could show a Rule 11 violation that rose to a level sufficient to justify a collateral attack, his self-serving post hoc statement by itself would be inadequate to warrant relief.  Because Zullo cannot demonstrate any Rule 11 violation, let alone that he misunderstood the nature of the charges against him to such a degree that he would not otherwise have pleaded guilty, Zullo cannot prevail on his Rule 11 claim.

### III. Ineffective-Assistance-of-Counsel Claims

#### A. Legal Standard

Unlike certain other types of claims, ineffective-assistance claims may be raised for the first time in a § 2255 motion, "whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504, 509 (2003); *accord Yick Man Mui v. United States*, 614 F.3d 50, 54 (2d Cir. 2010). In criminal proceedings, a defendant has a Sixth Amendment right to effective assistance from his attorney at all stages of the proceedings, including entering a plea of guilty, *see, e.g.*, *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *see generally Missouri v. Frye*, 132 S. Ct. 1399, 1405 (2012), and sentencing, *see, e.g.*, *Glover v. United States*, 531 U.S. 198, 202–04 (2001); *Mempa v. Rhay*, 389 U.S. 128, 134 (1967). The attorney has an "overarching duty to advocate the defendant's cause." *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

In order to succeed on a claim of ineffective assistance of counsel, a claimant must meet the two-pronged test established by *Strickland*:

> (1) he must show that counsel's performance was deficient, so deficient that, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance; and (2) he must show that the deficient performance prejudiced the defense, in the sense that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011) (citations and internal quotation marks omitted). "The [ineffective-assistance-of-counsel] claim must be rejected if the defendant fails to meet either the performance prong or the prejudice prong." *Id.* at 85.

Regarding the first prong of the *Strickland* analysis, an attorney's representation is deficient when it falls "below an objective standard of reasonableness," as determined by reference to "prevailing professional norms." *Strickland*, 466 U.S. at 688; *see Morales v. United States*, 635 F.3d 39, 43 (2d Cir. 2011). The question is not whether counsel "deviated from best practices or most common custom," but whether his representation "amounted to incompetence under 'prevailing professional norms.'" *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690). "Constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690).

In assessing the attorney's performance, a court "must apply a 'heavy measure of deference to counsel's judgments,'" *id.* (quoting *Strickland*, 466 U.S. at 691), and recognize a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Palacios v. Burge*, 589 F.3d 556, 561 (2d Cir. 2009) (quoting *Strickland*, 466 U.S. at 689). "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable,' *Id.* at 588 (quoting *Strickland*, 466 U.S. at 690). Counsel's performance must be evaluated without the benefit of hindsight, *see Lynch v. Dolce*, No. 14-1675-pr, 2015 WL 3771891, at *6

(2d Cir. June 18, 2015), and counsel "'is not required to forecast changes or advances in the law' in order to provide effective assistance." *McCoy v. United States*, 707 F.3d 184, 188 (2d Cir. 2013) (per curiam) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001).

As to the second *Strickland* prong, counsel's performance is prejudicial when it is so poor as to "undermine confidence in the outcome" of the proceedings such that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see Morales*, 635 F.3d at 43. In the context of a guilty plea, "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. In the sentencing context, a defendant must show a reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence. *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013). *See generally Lafler v. Cooper*, 132 S. Ct. 1376, 1387 (2012); *Glover*, 531 U.S. at 203.

A § 2255 petitioner bears the burden of proof to prove his claims by a preponderance of the evidence. *See Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000) (petitioner failed to demonstrate a divergence between his interests and those of his attorney's on any factual matter, legal issue, or course of action). "Self-serving conclusory allegations . . . are insufficient to establish ineffective assistance of counsel." *Blumenberg v. United States*, Nos. 05 Civ. 9416(JGK), 01 Cr. 571(JGK), 2009

WL 3459185, at *3 (S.D.N.Y. Oct. 27, 2009) (citing *United States v. Torres*,

129 F.3d 710, 715–17 (2d Cir. 1997).

### B.    Failure to Challenge Indictment

Zullo argues that Attorney Carleton improperly "allowed [him] to plead guilty to a

count of an indictment that omitted two essential elements of the [§ 846] offense" as well

as two other counts that were "derivatively defective."  (Doc. 1240 at 7.)  Carleton

maintains that Zullo's allegations on this point are "legally unsound."  (Doc. 1254

at ¶ 38.)  The government asserts that Zullo's claim is forfeited because he asserted the

same jurisdictional arguments on appeal and lost.  (Doc. 1267 at 10.)

A § 2255 motion may not be used "'to relitigate questions which were raised and

considered on direct appeal.'"  *Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir. 1992)

(quoting *Barton v. United States*, 791 F.2d 265, 267 (2d Cir. 1986) (per curiam)).  Here,

the Second Circuit already has rejected any claim that the indictment omitted essential

elements of the § 846 offense.  *See Zullo*, 581 F. App'x at 71 (concluding that the Second

Superseding Indictment properly alleged the elements of the § 846 offense and affirming

Zullo's conviction on direct appeal).  To the extent Zullo now attempts to repackage the

same claim as an ineffective-assistance-of-counsel claim, he cannot demonstrate

prejudice because it is indisputably meritless.  *See Harrington*, 689 F.3d at 130 ("[A]

petitioner cannot show prejudice if the claim or objection that an attorney failed to pursue

lacks merit.").

### C.    Alleged Failure to Explain the Law, Application of the Law, the Length of the Sentence, the Plea Agreement, and the Consequences of a Guilty Plea; Failure to Object to Government's Reservation of Right to Appeal

Zullo alleges that Attorney Carleton failed to "adequately explain to [him] the ramifications of the plea agreement, did not properly explain all of the various options available to him, and did not ensure that [Zullo] thoroughly understood the stipulations of the plea agreement or the consequences of entering into the plea agreement with the government." (Doc. 1240 at 4.)  He also alleges that Carleton should not have allowed him to enter into a plea agreement that permitted the government to appeal.  (*Id.*)  For the reasons below, I conclude that Zullo cannot show deficient performance as to any of those alleged failings.

"The decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in a criminal case . . . [and] counsel may and must give the client the benefit of counsel's professional advice on this crucial decision."  *Boria v. Keane*, 99 F.3d 492, 496–97 (2d Cir. 1996) (quoting Anthony G. Amsterdam, *Trial Manual 5 for the Defense of Criminal Cases* § 201 at 339 (1988)).  "Ineffective assistance of counsel during plea negotiations can invalidate a guilty plea and make granting withdrawal appropriate, to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of defendant's decision to plead guilty." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005).  The petitioner bears the burden to show that "the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012).  "[A] petitioner must convince the court

that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000)).  With respect to the prejudice prong, the petitioner must show "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Lafler*, 132 S. Ct. at 1384–85 (alteration in original) (quoting *Hill*, 474 U.S at 59).

The record evidence demonstrates that Attorney Carleton's performance in the course of advising Zullo regarding the plea agreement was professional and competent. The parties do not dispute that Attorney Carleton spoke with Zullo on multiple occasions during the pendency of the case.  (*See* Doc. 1240-7 at ¶¶ 6, 8 (Zullo alleges he "maintained steady contact" Attorney Carleton and "regularly spoke with Mr. Carleton" after he was arraigned on the Second Superseding Indictment).)  The parties do not dispute that Attorney Carleton sent Zullo a copy of the plea agreement several days before meeting with him to explain the document, nor that the parties met for 30 to 45 minutes on April 21, 2010 prior to Zullo initialing each paragraph and signing it.  (*See id*. at ¶¶ 9–10.)  The parties also do not dispute that Attorney Carleton explained that if Zullo did not cooperate with the government, and he chose to plead guilty, he would be exposed to a 10-year mandatory minimum under *Williams* and *Whitley*.  (*See id*. at ¶ 8 (Zullo alleges that Carleton "informed [him] that the quantity of drugs with which I was charged . . . triggered a ten-year mandatory minimum").)

Instead, Zullo alleges that Attorney Carleton "put pressure" on him and advised that "the law [was] expected to be changing soon so it would be to [Zullo's] benefit to

plead guilty and be sentenced before the law change[d]."  (*Id*.) (first and third alterations in original).  Zullo alleges he "was not made aware of . . . the fact that if the Supreme Court was to decide in favor of the government in *Abbott*, the District Court would be bound by the Second Circuit's mandate and would be required to re-sentence [him]." (Doc. 1240-5 at 12.)  According to Zullo, Attorney Carleton "le[ft] him with the understanding" that by pleading guilty "he would be locked in under the old law (a concurrent sentence pursuant to *Williams* and *Whitley*)."  (*Id*. at 12–13.)  Zullo further alleges Attorney Carleton "never mentioned nor explained the principle of retroactivity" or the possibility that the Second Circuit could vacate the 10-year mandatory minimum sentence in the event *Abbott* was decided in the government's favor.  (*Id*. at 14.)  Zullo claims that if he had known this, he would have proceeded to trial, because his sentencing exposure would have been the same regardless.

Zullo's post hoc argument does not comport with the record.  Zullo initialed the provisions of the plea agreement stating that he could be subject to a *consecutive* five-year mandatory minimum term for the firearms charge (Doc. 308 at ¶ 2), and that he was "fully satisfied with the representation provided to him" by Attorney Carleton.  (*Id*. at ¶ 20.)  Zullo states that he regularly communicated with Attorney Carleton, that he reviewed the plea agreement with Attorney Carleton, and that Attorney Carleton explained the mandatory minimum sentences.  (*Id*.)

The Court also credits Zullo's own testimony in open court that he understood the plea agreement and his sentencing exposure, as well as the possibility that the law in the Second Circuit could change.  *See United States v. Torres*, 129 F.3d 710, 715

(2d Cir. 1997) ("[S]tatements at a plea allocution carry a strong presumption of veracity . . . ."). Zullo testified at his change-of-plea hearing that he was satisfied with Attorney Carleton's advice regarding the plea agreement and the sentencing guidelines and that he understood the possibility that his convictions could result in a 15-year mandatory minimum. (*See* Doc. 623 at 11–13, 21.) Zullo affirmed that he had engaged in the conduct described by AUSA Nolan. (Doc. 623 at 7–10.) He did not dispute Attorney Carleton's statement to the Court that he had "discussed [*Abbott* and its potential consequences] with Mr. Zullo. And [Zullo is] fully aware of the somewhat uncertain state of whether or not [§] 924(c) will be consecutive or concurrent." (*Id*. at 13.)

Zullo's testimony also comports with Attorney Carleton's own recollection of their conversations. (*See* Doc. 1254 at ¶ 3 (Attorney Carleton's affidavit states that he discussed with Zullo "the fact that it was likely that he would end up with a 15[-]year mandatory sentence if he decided to plead guilty regardless of whether he pled before or after *Abbott* was decided").) Zullo also has not offered any evidence other than his affidavit that would contradict his earlier testimony. *See Perez v. United States*, 589 F. App'x 13, 15 (2d Cir. 2014) (petitioner cannot rely upon evidence that is "wholly dependent on . . . his [own] credibility"); *Samet v. United States*, 559 F. App'x 47, 49 (2d Cir. 2014) ("[I]t is equally well settled that district courts need not accept the uncorroborated statements of a criminal defendant at face value.").

Zullo also challenges Attorney Carleton's advice to sign a plea agreement that allowed the government to appeal. Of course it was the government's appeal that led to the vacatur of Zullo's sentence and remand of the case for resentencing in accordance

with *Abbott*.  But Zullo has failed to show that Carleton's advice on this point amounted to deficient performance.  Zullo cannot demonstrate that the government would have even considered omitting the appeal provision.  *See Winkler v. Keane*, 7 F.3d 304, 309 (2d Cir. 1993) (holding that a challenge to defense strategy requires the petitioner to show that the tactic "'possessed sufficient substance to be a viable alternative'") (quoting *United States v. Gambino*, 864 F.2d 1064, 1071 (3d Cir. 1988)).  Indeed, the government had advised the defense in March 2010 (prior to the plea agreement) that it would argue that the § 924(c) sentence must run consecutively (*see* Doc. 1254-5 at 2), and that remained the government's position in its October 12, 2010 sentencing memorandum (Doc. 473 at 1) and at the October 19, 2010 sentencing hearing (*see* Doc. 528 at 7).

For all these reasons, Attorney Carleton's advice to plead guilty was neither improper nor coercive, and was well within the range of professionally competent assistance.  Attorney Carleton and Zullo both recognized the strength of the government's case, (Doc. 1254 at ¶ 4), so Carleton's advice to plead guilty was sensible in light of Zullo's refusal to cooperate with the government.  *See United States v. Juncal*, 245 F.3d 166, 172 (2d Cir. 2001) ("Nor does defense counsel's blunt rendering of an honest but negative assessment of appellant's chances at trial, combined with advice to enter a plea, constitute improper behavior or coercion that would suffice to invalidate a plea.")  Accordingly, Zullo cannot show that Attorney Carleton failed to explain the plea agreement or its consequences to him, or that Attorney Carleton offered incompetent advice when he encouraged Zullo to accept the plea agreement and plead guilty.

### D.     Alleged Failure to Explain Application of USSG § 3E1.1

Zullo alleges that Attorney Carleton never explained that Zullo "would not receive any benefit . . . for acceptance of responsibility."  (Doc. 1240 at 5; Doc. 1240-7 at ¶ 15.) Attorney Carleton asserts that he "fully informed Mr. Zullo about, and Mr. Zullo expressed his understanding of, the law and facts relating to his case, the consequence of his guilty pleas, the Sentencing Guidelines, and the actual and potential mandatory minimums applicable to him."  (Doc. 1254 at ¶ 37.)  The government maintains that Zullo cannot show deficient performance or prejudice on this point, arguing that, because of overwhelming evidence against Zullo, cooperation was the only way to avoid a 15-year mandatory minimum.  (Doc. 1267 at 16.)  According to the government, since Zullo had ruled out cooperating, § 3E1.1's credit was irrelevant: where the minimum sentence is 15 years (180 months), it makes no difference whether Zullo's offense level was 33 (with a guideline range of 135–168 months) or was reduced to 30 under § 3E1.1 (with a guideline range of 97–121 months).  Thus, the government maintains that "[t]here can be no ineffective assistance for failing to explain a factual scenario that simply does not apply."  (Doc. 1267 at 16.)

Zullo cannot prevail on his claim regarding § 3E1.1.  The government's offer in the plea agreement to recommend that Zullo receive credit for acceptance of responsibility under § 3E1.1 was not valueless as Zullo seems to claim.  The § 3E1.1 credit was strategically valuable because, if the Supreme Court in *Abbott* had not abrogated *Williams* and *Whitley*, then the three-point credit would have had a favorable impact on Zullo's sentence.

Namely, without the § 3E1.1 credit, Zullo's total offense level on the conspiracy and money-laundering counts would have been 33 instead of 30, resulting in a guidelines range of 135–168 months.  The low end of that range—135 months—exceeds the 10-year (120-month) mandatory minimum that would have controlled Zullo's sentence if the 5-year and 10-year minimum terms ran concurrently.  Thus, if the *Abbott* decision had been favorable to Zullo, he might have faced a 135-month minimum (instead of a 120-month minimum) without § 3E1.1's credit.  Securing the credit was important insofar as it reduced Zullo's guidelines range in the event that the *Abbott* decision might have favored Zullo.  Of course, the Supreme Court in *Abbott* did abrogate *Williams* and *Whitley*, but Attorney Carleton had no control over that.

To the extent that Carleton might not have explained to Zullo that the § 3E1.1 credit would only favorably impact his sentence if the Supreme Court in *Abbott* were to let *Williams* and *Whitley* stand, Zullo cannot prove that, with that explanation he would have insisted on going to trial, or that such insistence would have been rational.  By going to trial, Zullo would have risked losing any potential benefit of the § 3E1.1 credit.  In light of the strength of the government's case, taking that risk would not have been rational.

### E.    Alleged Failure to Explain Elements of § 924(c)(1)(A)

Finally, Zullo alleges that Attorney Carleton never explained the meaning of "in furtherance of" for purposes of § 924(c).  (Doc. 1240-7 at ¶ 14.)  Zullo argues that his conduct was not "in furtherance" of a drug trafficking crime, and there was no "nexus" between the firearms and the underlying offense.  (*See* Doc. 1240-5 at 13; *see also*

30

*Id.* at 16 ("A firearm was found under a pillow and drugs were discovered hidden in a closet.  No criminal act or drug transaction was in play.").)  Zullo cites *United States v. Timmons*, 283 F.3d 1246, 1252 (11th Cir. 2002), for the proposition that the "mere presence" of a firearm is insufficient.  Zullo contends he would not have pleaded guilty had he understood this aspect of the law.

Zullo cannot show prejudice on this issue because there is no merit to his claim that his conduct was not "in furtherance" of a drug trafficking crime.  *See Harrington*, 689 F.3d at 130 ("[A] petitioner cannot show prejudice if the claim or objection that an attorney failed to pursue lacks merit.").  The "in furtherance" element of a § 924(c) conviction may be proven by "a showing of some nexus between the firearm and the drug selling operation."  *United States v. Finley*, 245 F.3d 199, 203 (2d Cir. 2001) (citing *United States v. Munoz*, 143 F.3d 632, 637 n.5 (2d Cir. 1998)).  Where a "jury could properly have found that [the defendant] kept the [firearm] for protection in proximity" to the location where he sold drugs, a sufficient nexus is shown.  *Id.*  Additionally, § 924(c) may apply "where the charged weapon is readily accessible to protect drugs, drug proceeds, or the drug dealer himself."  *United States v. Snow*, 462 F.3d 55, 62–63 (2d Cir. 2006).

Zullo admitted under oath at the change-of-plea hearing that he "possessed firearms in furtherance of the drug trafficking conspiracy," that he "regularly carried firearms on his person and in his vehicle to protect himself, his drugs and his drug proceeds while engaged in the transportation and distribution of drugs," and that he "acquired firearms through trading of cocaine."  (Doc. 623 at 8–10.)  He admitted—and

does not now dispute—that 108.4 grams of cocaine and guns were seized upon his arrest, and that another gun was seized from his vehicle during an earlier traffic stop.  (*Id*.)  The PSR also details additional witness testimony that Zullo carried firearms to protect himself and his drugs and drug proceeds, as well as the fact that he traded drugs for cocaine.  (PSR ¶¶ 35–50.)  Given the overwhelming evidence favoring a conviction on the § 924(c) offense,[4] Zullo cannot claim that Attorney Carleton was ineffective for failing to better explain the "in furtherance" element of this charge or to otherwise challenge that count of the indictment.  Therefore, Zullo cannot prevail on this claim.

## IV.   No Hearing is Required

In ruling on a § 2255 motion, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *see Pham v. United States*, 317 F.3d 178, 185 (2d Cir. 2003) (section 2255 does not permit summary dismissals of motions that present facially valid claims).  However, § 2255 does not entitle the defendant to a hearing where his allegations are "vague, conclusory, or palpably incredible."  *Machibroda v. United States*, 368 U.S. 487, 495 (1962); *see Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001).  To warrant a hearing, the defendant's motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief.

---

[4]  *Timmons*, cited by Zullo, also supports the conclusion that the facts to which Zullo pleaded guilty readily satisfied the "in furtherance of" element of the § 924(c) count.  *See Timmons* 283 F.3d at 1253 (concluding that evidence of "bullet proof vest, crack cocaine on the stove and under the cushions of the couch, two fully loaded firearms on top of the oven and ammunition inside the oven in the living room of his apartment" sufficient to satisfy "in furtherance of" element of § 924(c)).

*See Machibroda*, 368 U.S. at 494; *United States v. Aiello*, 814 F.2d 109, 113–14

(2d Cir. 1987).  Zullo has failed to show specific facts that if proved at a hearing would

warrant the granting of his Motion.  Accordingly, no hearing is required.

## Conclusion

Accordingly, I recommend that Zullo's Motion Under 28 U.S.C. § 2255 to Vacate,

Set Aside, or Correct Sentence (Doc. 1240) be DENIED.

Dated at Burlington, in the District of Vermont, this 31st day of July, 2015.


/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge


Any party may object to this Report and Recommendation within fourteen days after
service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge
and all parties, written objections which shall specifically identify those portions of the
Report and Recommendation to which objection is made and the basis for such
objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).
Failure to timely file such objections "operates as a waiver of any further judicial review
of the magistrate's decision."  *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15,
16 (2d Cir. 1989).