UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

     v.                                                         Crim. Action No. 1:09-cr-64-2

Jeremy D. Zullo

## **REPORT AND RECOMMENDATION**
(Doc. 1363)

      In a Motion filed pursuant to Federal Rule of Civil Procedure 60(b)(6), Jeremy D. Zullo, proceeding *pro se*, seeks an Order from this Court as part of an effort to vacate his 2010 firearms conviction for violating 18 U.S.C. § 924(c).[1] (Doc. 1363 at 1.) In support of his Motion, Zullo invokes what he refers to as the "*Holloway* Doctrine." (*Id.*; *see generally United States v. Holloway,* 68 F.Supp.3d 310 (E.D.N.Y. 2014).) He requests that this Court mirror the actions of the United States District Court for the Eastern District of New York in *Holloway* by issuing an order prevailing upon the United States Attorney's Office to "consider exercising their discretion to agree to an [order] vacating the Petitioner's conviction." (Doc. 1363 at 12.)

      In a Response in Opposition to Zullo's Motion, the government indicates that "[t]he U.S. Attorney's office declines to exercise any discretion it may have to join in

---

[1] Although the document has been docketed by the Clerk's Office as a motion filed pursuant to 28 U.S.C. § 2255, Mr. Zullo relies upon Rule 60(b) in support of his Motion.

efforts to vacate Zullo's lawful firearms conviction." (Doc. 1370 at 5.) Further, the government argues that, although Zullo purports to seek relief under Federal Rule of Civil Procedure 60(b)(6), his Motion is in substance a second collateral attack on his sentence and conviction pursuant to 28 U.S.C. § 2255. (*Id.*) Zullo has already filed one § 2255 Motion with this Court (Doc. 1240), which, in 2015, was denied in an Order adopting a Report and Recommendation. (Docs. 1299, 1307.) As a result, the government contends that this Court must either transfer the Motion to the Second Circuit for certification as is required of successive habeas petitions or, as they urge, simply dismiss it as beyond the scope of Rule 60(b). (Doc. 1370 at 6 (citing *Gitten v. United States,* 311 F.3d 529, 533–34 (2d Cir. 2002).)

For the reasons that follow, I conclude that Zullo's Motion is not properly characterized as a successive § 2255 motion. I recommend that the Motion be DENIED as beyond the scope of Federal Rule of Civil Procedure 60(b).

## Background

### I.     Zullo's Conviction and Sentencing

In June 2009, Zullo was arrested and charged with distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). (Doc. 1299 at 1.) That single charge was later consolidated in a comprehensive superseding indictment in which a grand jury charged Zullo and 15 other individuals with a number of offenses related to their involvement in a Rutland, Vermont, drug distribution ring. (Doc. 163.) Zullo was charged in the superseding indictment with conspiracy to distribute marijuana and five kilograms or more of cocaine, 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), possession of a firearm in

furtherance of a drug trafficking offense, 18 U.S.C. § 924(c)(1)(A)(i), money laundering, 18 U.S.C. §§ 2, 1957, and several counts concerning substantive drug-distribution offenses, 21 U.S.C. §§ 841(a)(1), 846.  (Docs. 163, 1299.)

Two of the charged offenses were subject to statutory mandatory minimum prison sentences.  The conspiracy count carried a mandatory minimum of ten years upon conviction, while the § 924(c) firearm offense carried a mandatory minimum of five years.  21 U.S.C. § 841(b)(1)(A); 18 U.S.C. § 924(c)(1)(A).  At the time Zullo's case was pending, however, there was disagreement among the Circuit Courts of Appeals about whether § 924(c) sentences must be run concurrently with or consecutive to a longer sentence imposed for the crime in furtherance of which the firearm was possessed. (Doc. 1299 at 4.)  Second Circuit precedent then required that a sentence for a § 924(c) violation not run consecutively where the defendant was subject to another, longer mandatory minimum sentence for a drug trafficking offense that was part of the same transaction or set of operative facts as the firearm charge.  *United States v. Williams*, 558 F.3d 166, 168 (2d Cir. 2009); *United States v. Whitley*, 529 F.3d 150 (2d Cir. 2008).  To resolve the Circuit split, the Supreme Court granted certiorari in *Abbott v. United States*, a case in which the issue was squarely presented, but until a decision was issued, Zullo's total sentencing exposure remained unclear.  *Abbott v. United States*, 562 U.S. 8 (2010).

Despite this uncertainty, and in the face of compelling evidence of guilt, Zullo declined to engage in offers of cooperation.  (Doc. 1274 at 3, 6 ("The government is most certainly correct in stating that the Movant could have avoided the mandatory minimum if he chose to cooperate.").)  Accordingly, Zullo's defense attorney requested a plea

3

agreement offer from the government. (Docs. 1254 at 4; 1299 at 5.) The offer extended to Zullo required him to plead guilty to both the conspiracy count and the § 924(c) firearms count, subject to a ten- and five-year mandatory minimum, respectively, along with the money-laundering count. (Docs. 308 at 1; 1299 at 5.)

Zullo pleaded guilty to all three counts before United States District Judge J. Garvan Murtha on May 26, 2010. (Doc. 623.) At sentencing, over the government's objection, the Court determined that *Williams* and *Whitley*—then still in effect pending the Supreme Court's anticipated decision in *Abbott*—required the five-year § 924(c) sentence to run concurrently with the conspiracy count as well. (*Id.* at 12.) Zullo was sentenced to 126 months for the conspiracy count, 120 months for the money-laundering count, and 60 months for the firearms count, each sentence to be served concurrently. (Docs. 486 at 2; 1299 at 12.)

The government then appealed from the Court's concurrent, rather than consecutive, imposition of the § 924(c) sentence. (Doc. 519.) While that appeal was pending, the Supreme Court issued the *Abbott* decision, which abrogated Second Circuit case law by holding that a § 924(c) firearms sentence must be served consecutively to any higher mandatory minimum sentence for a related count. *Abbott*, 562 U.S. at 13. In light of this ruling, the Second Circuit vacated Zullo's original sentence and remanded for resentencing consistent with *Abbott*. *United States v. Brooker*, No. 10-4764-cr, 2011 WL 11068864, at *1 (2d Cir. Dec. 22, 2011). Zullo was resentenced by Judge Murtha on August 15, 2013. (Docs. 1201, 1202, 1299 at 13.) In accordance with *Abbott*, the five-year § 924(c) sentence was imposed to run consecutively to the conspiracy and money-

laundering terms, and Zullo's prison term increased to a 15-year total term of imprisonment.

## II.     Zullo's § 2255 Motion

On November 14, 2014, Zullo filed a habeas petition with this Court asking that his conviction be vacated, set aside, or overturned on the basis of alleged violations of both the Sixth Amendment to the United States Constitution and Federal Rule of Criminal Procedure 11(b)(1)(G).  (Docs. 1240, 1247.)  In his initial filing, he argued that Attorney Ian Carleton provided him with ineffective assistance of counsel in contravention of his Sixth Amendment right to competent representation.  (Doc. 1240 at 5–8.)  He alleged that Attorney Carleton was ineffective in failing to fully explain several aspects of the law before Zullo pleaded guilty, and in allowing Zullo to enter into a plea agreement in which the government's right to appeal the imposed sentence was preserved.  (*Id.*)  In a supplemental document filed December 11, 2014, he added an allegation that his plea of guilty to the drug-conspiracy count was "entered unknowingly, unintelligently, and involuntarily, in violation of Fed. R. Crim. P. 11."  (Doc. 1247 at 2.)

A Report and Recommendation issued on July 31, 2015 in which it was concluded that Zullo's Motion should be denied.  (Doc. 1299.)  Zullo timely filed his objections to the Report and Recommendation.  (Doc. 1300.)  Judge Murtha found Zullo's objections to be without merit, the Report and Recommendation was adopted on October 29, 2015, and Zullo's Motion was denied.  (Doc. 1307.)  Zullo subsequently filed a Motion for a Certificate of Appealability of the Court's denial of his § 2255 Motion.  (Doc. 1310.)  The Court denied this Motion pursuant to Federal Rule of Appellate Procedure 22(b),

5

finding that Zullo "failed to make a substantial showing of a denial of a constitutional right." (Doc. 1311.) Zullo appealed this denial to the Second Circuit, which dismissed his appeal on June 16, 2016. (Docs. 1320, 1351.) On October 24, 2016, Zullo filed the instant Motion. (Doc. 1363.)

## Analysis

Zullo, seeking relief under "the *Holloway* Doctrine," contends that he brings his claim pursuant to Federal Rule of Civil Procedure 60(b)(6). (Doc. 1363.) However, the government's Response in Opposition to Zullo's Motion characterizes the Motion, instead, as a collateral attack on Zullo's original conviction pursuant to § 2255. (Doc. 1370.) In evaluating Zullo's Motion, the Court remains cognizant of the fact that *pro se* litigants like Zullo are generally "entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.'" *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

**I.     Relief Under the "*Holloway* Doctrine"**

Zullo asks this Court to recommend to the government that it assent to the vacatur of his sentence under what he refers to as "the *Holloway* Doctrine." *But see Acuna v. United States*, CRIM. NO. 07-00615 SOM, 2016 WL 3747531 at *1, *3 (D. Haw. July 8, 2016) (observing that petitioners asked for a sentence reduction under "the so-called *Holloway* Doctrine," and that another district court viewed the same as "not so much a doctrine, but as 'a single case carrying no precedential weight in this court.'" (quoting *United States v. Horton*, No. 2:12-CR-00007-F1, 2016 U.S. Dist. LEXIS 78611

6

(E.D.N.C. June 16, 2016))).  I begin by outlining the operative facts and ultimate disposition of *Holloway* because that case seems to articulate most clearly the relief that Zullo is seeking—likely far more so than his Motion's ultimate characterization as either a successive habeas petition or a Rule 60(b) motion.  However, analysis of *Holloway* also reveals that *Holloway*, by itself, provides no procedural vehicle for relief.

In 1994, Francois Holloway was indicted for his role in a series of three armed carjackings he perpetrated with an accomplice.  *Holloway*, 68 F.Supp.3d at 312.  The government brought a separate count for each carjacking, appending to each carjacking count a § 924(c) count for use of a firearm during that crime.  *Id.*  Second or subsequent § 924(c) counts, even when brought in the same trial as the first, are subject to severe sentence enhancements.  *Id.*  The mandatory minimum for Holloway's first § 924(c) count was five years, but the mandatory minimum for each of the two subsequent counts was 20 years.  *Id.*  Further, each of these terms had to be served consecutive to each other and to the sentence on the underlying carjacking offense.  *Id.*  As a result, when Holloway was found guilty of all of these counts at trial, the court was required to impose a total prison term of 57 years and 7 months.  *Id.*  Apparently, if, instead of going to trial, Holloway had accepted the government's earlier plea offer, he would have instead served roughly nine years.  *Id.*

Holloway's conviction and sentence were affirmed on appeal to both the Second Circuit and the Supreme Court.  *Holloway v. United States*, 526 U.S. 1 (1999); *United States v. Holloway*, 126 F.3d 82 (2d Cir. 1997).  In 2002, Holloway sought to vacate his sentence pursuant to 28 U.S.C. § 2255, and that motion was denied.  *United States v.*

7

*Holloway*, 68 F.Supp.3d at 313.  The Second Circuit declined to issue a certificate of appealability of the denial of his habeas petition, nor did they consent to certify a successive petition in 2010.  *Id.* at 313–14.  Finally, in 2012, Holloway filed a motion pursuant to Federal Rule of Civil Procedure 60(b) that sought to reopen his prior § 2255 petition.  *Id.* at 314.

The Rule 60(b) motion came before Judge John Gleeson, Holloway's original sentencing judge.  *Id.*  Judge Gleeson, "[r]ecognizing that there were good reasons to revisit Holloway's excessive sentence but no legal avenues or bases for vacating it," issued an order stating, "I respectfully request that the United States Attorney consider exercising her discretion to agree to an order vacating two or more of Holloway's 18 U.S.C. § 924(c) convictions."  *Id.*  By letter, the U.S. Attorney declined to agree to such order, but indicated that Holloway might consider seeking relief pursuant to the President's clemency power.  *Id.*  After the Department of Justice announced a new clemency initiative with criteria likely to disqualify Holloway from support, Judge Gleeson again issued an order asking the U.S. Attorney to consider exercising her discretion to agree to an order vacating two or more of Holloway's § 924(c) convictions so that "he could face a more just resentencing."  *Id.*  This second entreaty moved the U.S. Attorney to agree, and her office proposed "to withdraw our opposition to the pending Rule 60(b) motion, and also to state on the record that we wouldn't oppose the granting of the underlying 2255 motion for the purpose of vesting the court with authority to vacate two of the 924(c) convictions, and to proceed to resentence."  *Id.* at 315.

8

Maintaining that *Holloway* was a "unique case" and Holloway a "unique defendant," the United States Attorney's office cited two specific considerations that affected their decision: the victims of Holloway's 1994 carjackings all supported an earlier release for Holloway; and Holloway's behavioral record while in prison was exemplary and he had availed himself of many of the "educational and other opportunities" provided by the Bureau of Prisons. *Id.* In his order granting the motion to vacate the two § 924(c) convictions, Judge Gleeson noted that his decision to issue the order was likewise prompted by Holloway's extraordinary efforts at self-improvement and commendable behavior while incarcerated, but was also informed by statistics showing that minority defendants like Holloway were disproportionately charged with "stacked" § 924(c) counts and his concerns about the "trial penalty"—a sentence of 57 years and 7 months, as opposed to approximately nine years if he had accepted the government's plea agreement—Holloway incurred. *Id.* at 313. Finally, Judge Gleeson recognized that "the authority exercised in this case will be used only as often as the Department of Justice itself chooses to exercise it, which will no doubt be sparingly." *Id.* at 316. Indeed, subsequent claimants have found limited purchase with the U.S. Attorney's office in Brooklyn. *See United States v. Marin-Moreno*, 08-CR-605 (JG), 2016 WL 901666 at *1–2 (E.D.N.Y. Mar. 9, 2016) (observing that where the U.S. Attorney had declined to agree to a similar order requesting vacatur and resentencing, the court must deny "relief of the sort ordered in *Holloway*.")

In the instant Motion, Zullo contends that "now the Court has power under the 'Holloway Doctrine' to ensure that justice is done." (Doc. 1363 at 7.) However, as noted

9

in *Holloway* and *sequela*, *Holloway* itself does not confer the power to vacate a sentence on the Court. *See Brown v. United States*, CASE NO. 1:00-CR-290, 2016 WL 4745822 at *2 (N.D. Ohio 2016) (holding that "*Holloway* does not create an actionable new right under federal law.") Further, even in *Holloway* and other cases where the U.S. Attorney has agreed to the vacatur of a sentence, a procedural vehicle was still needed to accomplish that relief. *See Holloway*, 68 F.Supp.3d at 315 (granting Rule 60(b) motion to reopen defendant's prior § 2255 motion after the government withdrew its opposition, and deriving from the § 2255 motion authority to vacate his sentence). Therefore, as a threshold matter, this Court must evaluate Zullo's Motion—either as a Rule 60(b)(6) motion, as he has styled it, or a successive § 2255 petition, as the government contends that it is—in order to determine whether it would allow for vacatur of Zullo's sentence on the merits.

## II.     Zullo's Motion Cannot be Characterized as a Successive § 2255 Petition

The government contends that Zullo's Motion is not a Rule 60(b) motion but rather, "in substance, a successive habeas proceeding." (Doc. 1370 at 6.) This distinction is particularly salient because if a motion is, in fact, a successive habeas petition, the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996 requires that it be certified by the appropriate Court of Appeals before filing. 28 U.S.C. § 2255(h). In this case, the issue of classification is further confounded by a new request for relief that Zullo broached in his Reply to the government's opposition. (Doc. 1374.) Although he continued to style the instant Motion as "filed pursuant to Fed. R. Civ. P. 60(b)(6)," he concluded: "Further, the Petitioner requests that this Court transfer this

10

motion to the Court of Appeals for the Second Circuit for authorization to file pursuant to 28 U.S.C. §§ 2255(h) and 2244." (*Id.* at 2.)

With respect to an initial habeas filing, relief from a criminal sentence is only available under § 2255 where (1) the sentence was imposed in violation of the Constitution or laws of the United States, (2) the Court was without jurisdiction to impose such a sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). As a result, this Court may vacate a sentence under § 2255 "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)).

The grounds for certification of a second or successive § 2255 petition by the relevant Court of Appeals are even narrower. The Second Circuit must dismiss any claim made in a proposed successive petition "unless it is based on: (1) newly discovered evidence that would establish that no reasonable factfinder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *United States v. Larkins*, 14-1863, 2016 WL 6465623 at *1 (2d Cir. 2016); *Adams v. United States*, 155 F.3d 582, 583 (2d Cir. 1998) (holding that "[s]econd or successive applications may be heard only if they involve newly discovered evidence of a potentially dispositive nature, or a new and retroactive rule of constitutional law."). Even if a claim in the petition

11

meets one of those criteria, it must be dismissed if it was presented in a prior § 2255 petition. *Larkins*, 2016 WL 6465623 at *1. Further, second "and especially subsequent papers will be subject to denial on the ground of 'abuse of the writ,' *i.e.,* filing repetitive and insubstantial collateral attacks." *Gitten*, 311 F.3d at 532 (citing Rule 9(b), Rules Governing Section 2255 Proceedings for the United States District Courts).

District Courts are frequently called upon to determine whether *pro se* filings by prisoners are, regardless of what they purport to be, in fact, § 2255 petitions.[2] However, after AEDPA was enacted, placing "stringent limits" on the number of habeas petitions a claimant may file, the Second Circuit found it necessary to also limit the freedom district courts had in deeming a motion a § 2255 petition, because of the increased risk of prejudice to the defendant. *Adams*, 155 F.3d at 583. Therefore, the Court held,

> district courts should not recharacterize a motion purportedly made under some other rule as a motion made under § 2255 unless (a) the movant, with knowledge of the potential adverse consequences of such recharacterization, agrees to have the motion so recharacterized, or (b) the court finds that, notwithstanding its designation, the motion should be considered as made under § 2255 because of the nature of the relief sought, and offers the movant the opportunity to withdraw the motion rather than have it so recharacterized.

*Id.* at 584.

Insofar as the *Adams* rule was rooted in concern about barring a *first* habeas petition by recharacterizing another filing as a first habeas petition, it could be argued

---

[2] *See Adams v. United States*, 155 F.3d 582, 583 (2d Cir. 1998) ("Prior to the enactment of AEDPA, district courts routinely converted post-conviction motions of prisoners who unsuccessfully sought relief under some other provision of law into motions made under 28 U.S.C. § 2255 and proceeded to determine whether the prisoner was entitled to relief under that statute. This was done most frequently in cases of *pro se* litigants who sought relief under a statute or rule that accorded no relief . . . . In order to relax formalities that might needlessly frustrate *pro se* petitioners and because the practice was harmless, we affirmed . . . .")

12

that it does not extend to cases in which the disputed motion would be a second habeas petition. *Compare Adams*, 155 F.3d at 583 *with Castro v. United States*, 540 U.S. 375, 376 (2003) ("A federal court cannot recharacterize a *pro se* litigant's motion as a first § 2255 motion *unless* it first informs the litigant of its intent to recharacterize, warns the litigant that this recharacterization means that any subsequent § 2255 motion will be subject to the restrictions on 'second or successive' motions, and provides the litigant an opportunity to withdraw the motion or to amend it so that it contains all the § 2255 claims he believes he has.") However, where a motion is recharacterized as a second § 2255 petition, if that petitioner later brings a third petition, they are at greater risk of censure for "abuse of the writ," which invokes many of the same concerns that animated the *Adams* ruling. *See Hammie v. United States*, No. 3:01CV960 (RCN), 3:98CR130 (RNC), 2005 WL 3543768 at *1 (D. Conn. Dec. 20, 2005) (refusing to recharacterize a prisoner's Rule 60(b)(6) motion as a second § 2255 motion because "it would risk summary denial of any subsequent ([e.g., ]third) challenge he might make as an abuse of the writ.")

In evaluating Zullo's Motion, the Court must bear in mind its responsibility to interpret *pro se* pleadings "to raise the strongest arguments that they suggest." *Green*, 260 F.3d at 83 (quoting *Graham*, 89 F.3d at 79). A party's right to self-representation implicitly imposes "an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). In light of this mandate, and the obligation to interpret Zullo's pleadings to raise "the strongest arguments that they suggest," *Green*, 260 F.3d at 83 (quoting Graham, 89 F.3d at 79), the

13

Court should not interpret Zullo's request that the Court transfer his Rule 60(b)(6) Motion to the Second Circuit for certification under §§ 2255(h) and 2244 (Doc. 1374) as an indication that his Motion is intended as a successive habeas petition.

To interpret Zullo's filing as a § 2255 petition would be to impermissibly interpret a *pro se* party's filing to raise a weaker argument. Zullo's Motion does not allege anything even approaching one of the narrow grounds on which the Second Circuit could approve a successive habeas petition, as it makes no representations of new evidence or a new and retroactive provision of constitutional law. *See Adams*, 155 F.3d at 583. Additionally, Second Circuit case law requires that the Court seek informed consent from a movant prior to converting his filing to a habeas petition and transferring it to the Court of Appeals for certification. *Id.* at 584. Even if Zullo's request to transfer were interpreted as consent, this Court has no assurance that Zullo is aware of the "potential adverse consequences" of recharacterization. *Id.*; *Traguth*, 710 F.2d at 95. Therefore, the Court should rely on Zullo's styling of his Motion—consistent across the two related motions—as a Rule 60(b)(6) Motion, and evaluate it accordingly.

## III.   The Relief Requested is Beyond the Scope of Rule 60(b)

Pursuant to Federal Rule of Civil Procedure 60(b), a court may, "[o]n motion and just terms . . . relieve a party . . . from a final judgment, order, or proceeding" for certain enumerated reasons. Fed. R. Civ. P. 60(b). However, Rule 60(b) is "extraordinary judicial relief" and can be granted "only upon a showing of exceptional circumstances." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) (citing *Ben Sager Chems. Int'l Inc. v. E. Targosz & Co.*, 560 F.2d 805, 809 (7th Cir. 1977)). For this reason, motions for relief

from judgment under Rule 60(b) are generally "disfavored."  *Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 385 F. App'x 29, 31 (2d Cir. 2010) (citing *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004)).  Relief under subsection 60(b)(6) "is only available if Rules 60(b)(1) through (5) do not apply, and if extraordinary circumstances are present or the failure to grant relief would work an extreme hardship on the movant."  *ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 109 (2d Cir. 2012).  Through this requirement, the Second Circuit has "narrowly cabined" the application of Rule 60(b)(6), the "catch-all" provision of Rule 60(b).  *Harris v. United States*, 367 F.3d 74, 80 (2d Cir. 2004); *Empresa Cubana Del Tabaco*, 385 F. App'x at 31.

However, "[t]o the extent that the judgment from which a petitioner seeks relief is the prison sentence imposed following his conviction in a criminal case, Rule 60(b) does not apply."  *United States v. Bartz*, No. 1:94-CR-87, 2007 WL 1747149 at *1 (D. Vt. June 15, 2007) (alteration added) (quoting *Holloway v. United States*, 2016 WL 516826 at *1 (E.D.N.Y. Feb. 28, 2006)).  "[T]he Federal Rules of Civil Procedure 'govern the procedure in the United States district courts in all suits of a *civil* nature. . . .'"  *Negron v. United States*, 164 F. App'x 158 (2d Cir. 2006) (last alteration in original) (quoting Fed. R. Civ. P. 1).[3]  "Habeas corpus cases are civil in nature."  *Smart v. Goord*, 21 F. Supp. 2d 309, 313 (S.D.N.Y. 1998).  For this reason, a Rule 60(b) motion may be directed at a

---

[3] Rule 1 no longer reads as it was quoted by the Second Circuit in 2006.  It now states, in relevant part, "These rules govern the procedure in all civil actions and proceedings in the United States district courts . . . ."  Fed. R. Civ. P. 1.  It was amended in 2007 "as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules."  Fed. R. Civ. P. 1 advisory committee's note to 2007 amendment.  These changes, "intended to be stylistic only," do not alter the meaning of the rule.  *Id.*

prior habeas proceeding, but "only when the Rule 60(b) motion attacks the integrity of the previous habeas proceeding rather than the underlying criminal conviction." *Harris*, 367 F.3d at 76; *see also Gonzalez v. Crosby*, 545 U.S. 524, 533 (2005); *Green v. United States*, 92-CR-159A, 16-CV-534A, 2016 WL 4436320 at *2 (W.D.N.Y. Aug. 23, 2016) (denying a Rule 60(b) motion because, "[e]ven when read in the charitable light to which a *pro se* litigant is entitled, nothing in Petitioner's Rule 60(b) motion attacks the integrity of any of Petitioner's prior § 2255 proceedings.").

The Second Circuit has been clear that a Rule 60(b) motion "to vacate a judgment denying habeas is not a second or successive habeas petition and should therefore be treated as any other motion under Rule 60(b)." *Rodriguez v. Mitchell*, 252 F.3d 191, 198 (2d Cir. 2001). If a Rule 60(b) motion is properly directed, then the remedy provided is "simply 'the reopening of the federal habeas proceeding.'" *Brown v. Ercole*, 563 F. App'x 821, 822 (2d Cir. 2014) (quoting *Rodriguez*, 252 F.3d at 199). "[W]hen faced with an improper Rule 60(b) motion—*e.g.*, a motion that attacks an underlying conviction—district courts may either transfer the motion to the Court of Appeals for consideration as a second or successive motion under 28 U.S.C. § 2255 (with advance notice to the petitioner), or simply deny the motion as being beyond the scope of Rule 60(b)." *United States v. Morales*, No. 03 CV 4676(LAP), 2008 WL 4921535 at *4 (S.D.N.Y. Nov. 10, 2008) (citing *Gitten*, 311 F.3d at 534).

Zullo's Motion has been carefully evaluated for any argument that, rather than being directed at his underlying criminal sentence, is directed at the integrity of his habeas proceeding. None is found. Further, Zullo seeks the vacatur of his sentence, a

16

form of relief inconsistent with a Rule 60(b) motion directed at a prior habeas proceeding. Accordingly, I recommend that the Court conclude that Zullo's Motion, while not a successive habeas petition, falls beyond the scope of Rule 60(b) and must be dismissed on the merits. As a final matter, I address Zullo's letter to the Court dated December 4, 2016. (Doc. 1376.) Therein, he requests the Court's "guidance and direction" regarding new contention that both his 2010 plea agreement (Doc. 308) and subsequent guilty plea (Doc. 320) were later rendered invalid by an alleged breach of the plea agreement terms by the government. (Doc. 1376 at 3.) He asserts that the government's appeal of his sentence (Doc. 519) violated a term of the plea agreement, which stipulated that the sentence to be imposed on him was "within the sole discretion of th[e] Court." (Doc. 1376 at 2.) The Court should decline to engage in the guidance and direction Zullo seeks in his letter. But Zullo may raise his newest claims in an application for a successive habeas petition properly filed with the Second Circuit Court of Appeals pursuant to 28 U.S.C. § 2255(h).

## Conclusion

I recommend that Zullo's Motion under Federal Rule of Civil Procedure 60(b)(6) (Doc. 1363) be DENIED. Further, I recommend that the Court decline to issue an order requesting that the United States Attorney's Office reconsider its position on the vacatur of Zullo's § 924(c) conviction.

Dated at Burlington, in the District of Vermont, this 26th day of January, 2017.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).