UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | Crim. No. 1:09CR64-02 |
| | ) | |
| JEREMY ZULLO | ) | |
| Defendant. | ) | |

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION
## FOR COMPASSIONATE RELEASE

The United States of America, by and through its attorney, Christina E. Nolan, United States Attorney for the District of Vermont, submits this memorandum in opposition to Jeremy Zullo's motion, filed pursuant to the First Step Act, seeking a reduction in his 15-year drug and firearms sentence to time served. Although Zullo admits he suffers from no health-related issues, and presents no exigent family circumstances, he nonetheless insists there are "extraordinary and compelling reasons" why he should be released from prison years before he otherwise would be eligible.

This application should be denied.

## PROCEDURAL BACKGROUND

On May 26, 2010, Jeremy Zullo pled guilty to three counts of a superseding indictment charging him with conspiracy to

1

distribute five kilograms or more of cocaine, in violation of 21
U.S.C. §§ 846 and 841(b)(1)(A); possessing a firearm in
furtherance of a drug trafficking crime, in violation of 18
U.S.C. § 924(c); and money laundering, in violation of 18 U.S.C.
§ 1957.  The drug conspiracy charge called for a ten-year
mandatory minimum sentence, while the firearms charge entailed a
five-year mandatory minimum.  At the time of Zullo's plea, the
prevailing law in the Second Circuit did not require the
district court to run the firearms sentence consecutively to the
drug sentence.  See United States v. Williams, 558 F.3d 166 (2nd
Cir. 2009).  However, after Zullo was charged but before he pled
guilty, the Supreme Court granted certiorari in and consolidated
two cases to resolve a circuit conflict as to whether § 924(c)
mandated imposition of a consecutive firearms sentence.  See
Abbott v. United States & Gould v. United States, 559 U.S. 903
(2010).

Zullo's change-of-plea took place while Abbott was still
pending in the Supreme Court.  In the plea agreement Zullo
signed, he acknowledged that he faced a mandatory minimum ten-
year sentence on the drug conspiracy count and a five-year
mandatory minimum firearms sentence that could possibly run
consecutively to the drug sentence.  Plea Agreement ¶ 2.  At the
Rule 11 hearing, Judge Murtha similarly advised Zullo that the §

2

924(c) sentence might run consecutively to the conspiracy
sentence.  Plea Transcript pp. 11-13.  During that colloquy, the
parties specifically discussed the uncertainty in the law
concerning whether a § 924(c) sentence had to run consecutively
to any other sentence, and that a case was then pending before
the Supreme Court that might finally resolve the controversy.
Plea Transcript 12-13.  Zullo nonetheless pled guilty.

Sentencing took place on October 19, 2010, before Abbott
was decided.  The Government urged the district court to run
Zullo's firearms sentence consecutively to the ten-year drug
sentence.  The court declined to do so, instead imposing a
concurrent five-year sentence on the § 924(c) count.

The Government appealed.  On November 15, 2010, the Supreme
Court ruled that § 924(c) required any sentence under that
statute run consecutively to any other sentence.  Abbott v.
United States, 562 U.S. 8 (2010).  Abbott effectively overruled
the Second Circuit's holding in Williams and rendered Zullo's
aggregate 120-month sentence illegal.

The Second Circuit vacated Zullo's sentence and remanded
for resentencing in light of Abbott.  United States v. Zullo,
2011 WL 11068864 (2nd Cir. Dec. 22, 2011).  At resentencing in
August 2013, the district court sentenced Zullo to concurrent
120-month terms of imprisonment on the drug and money laundering

3

counts and ordered the five-year § 924(c) sentence run consecutively to those counts.

Acting pro se, Zullo appealed his new sentence and also argued that the indictment was defective for failing to allege all the elements of the charged offenses.  On October 24, 2014, the Second Circuit affirmed Zullo's resentence and rejected his challenge to the sufficiency of the indictment.  United States v. Zullo, 581 F.App'x 70 (2nd Cir. 2014).

In November 2014, Zullo filed a motion to vacate his conviction and sentence under 28 U.S.C. § 2255.  Zullo's initial filing asserted that Ian Carleton, the attorney who represented him at plea and first sentencing, had provided constitutionally deficient representation in the run-up to the guilty plea.  In a supplemental pleading, Zullo asserted that his guilty plea had been involuntary because the district court failed to adequately explain the elements of the drug conspiracy charge.

On July 31, 2015, the Magistrate Judge released a comprehensive 33-page Report and Recommendation concerning Zullo's motion to vacate, recommending that the motion be denied in full without an evidentiary hearing.  On August 17, 2015, Zullo filed his objections to the Report and Recommendation, as well as a motion for an evidentiary hearing and appointment of counsel.  On October 29, 2015, Judge Murtha adopted the

4

Magistrate Judge's Report and denied the Motion to Vacate, Motion for an Evidentiary Hearing, and Motion to Appoint Counsel.  On June 16, 2016, the Second Circuit denied Zullo a certificate of appealability.

On November 6, 2017, Zullo moved, pursuant to Fed. R. Civ. P. 60(b)(4), to vacate the denial of his § 2255 petition, reopen the case and afford him an evidentiary hearing on his ineffective assistance of counsel claim.  While that matter was pending, Zullo filed another motion, on February 8, 2018, alleging that the Government had breached the plea agreement by appealing from his original sentence.

On April 30, 2018, Judge Reiss issued an opinion and order denying the Rule 60 motion and, construing the motion alleging a plea agreement breach as a second or successive collateral attack on Zullo's conviction or sentence, transferred it pursuant to 28 U.S.C. § 1631 to the Second Circuit for certification pursuant to 28 U.S.C. § 2244(b)(3).  Zullo was notified that he had to apply to the Court of Appeals for authorization to file a successive petition but failed to do so. On June 22, 2018, the Court of Appeals dismissed the underlying motion alleging a plea agreement breach.

**ARGUMENT**

**A.    Compassionate Release Under The First Step Act**

The compassionate release statute, 18 U.S.C.

§ 3582(c)(1)(A), as amended by the First Step Act on December

21, 2018, provides in pertinent part:

> **(c) Modification of an Imposed Term of Imprisonment. —**
> The court may not modify a term of imprisonment once it
> has been imposed except that —
>
> (1)  in any case —
>
> (A)  the court, upon motion of the Director of the
> Bureau of Prisons, or upon motion of the defendant
> after the defendant has fully exhausted all
> administrative rights to appeal a failure of the Bureau
> of Prisons to bring a motion on the defendant's behalf
> or the lapse of 30 days from the receipt of such a
> request by the warden of the defendant's facility,
> whichever is earlier, may reduce the term of
> imprisonment (and may impose a term of probation or
> supervised release with or without conditions that does
> not exceed the unserved portion of the original term of
> imprisonment), after considering the factors set forth
> in section 3553(a) to the extent that they are
> applicable, if it finds that —
>
> > (i) extraordinary and compelling reasons warrant
> > such a reduction . . .
>
> and that such a reduction is consistent with
> applicable policy statements issued by the Sentencing
> Commission . . . .

Further, 28 U.S.C. § 994(t) provides:  "The Commission, in

promulgating general policy statements regarding the sentencing

6

modification provisions in section 3582(c)(1)(A) of title 18,
shall describe what should be considered extraordinary and
compelling reasons for sentence reduction, including the
criteria to be applied and a list of specific examples.
Rehabilitation of the defendant alone shall not be considered an
extraordinary and compelling reason." Accordingly, the relevant
policy statement of the Commission is binding on the court. See
Dillon v. United States, 560 U.S. 817, 827 (2010) (where 18
U.S.C. § 3582(c)(2) permits a sentencing reduction based on a
retroactive guideline amendment, "if such a reduction is
consistent with applicable policy statements issued by the
Sentencing Commission," the Commission's pertinent policy
statements are binding on the court).[1]

------------------------

[1] Prior to the passage of the First Step Act, while the
Commission policy statement was binding on the court's
consideration of a motion under § 3582(c)(1)(A), such a motion
could only be presented by BOP. The First Step Act added
authority for an inmate himself to file a motion seeking relief,
after exhausting administrative remedies, or after the passage
of 30 days after presenting a request to the warden, whichever
is earlier. In this case, it appears Zullo has exhausted
administrative remedies.

The inmate does not have a right to a hearing. Fed.R.Crim.P.
43(b)(4) states that a defendant need not be present where
"[t]he proceeding involves the correction or reduction of
sentence under Rule 35 or 18 U.S.C. § 3582(c)." See Dillon, 560
U.S. at 827-28 (observing that, under Rule 43(b)(4), a defendant
need not be present at a proceeding under § 3582(c)(2) regarding
the imposition of a sentencing modification).

The Sentencing Guidelines policy statement appears at § 1B1.13, and provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

Critically, in Application Note 1 to § 1B1.13, the Commission identifies the "extraordinary and compelling reasons" that may justify compassionate release. The note provides as follows:

> 1. **Extraordinary and Compelling Reasons**. — Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A)   **Medical Condition of the Defendant.** —
>
>> (i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor

_____

There is no right to counsel with respect to a motion for compassionate release. United States v. Smith, 2019 U.S. Dist. LEXIS 96383 (E.D. Ky. June 7, 2019); United States v. Webb, 565 F.3d 789, 793-95 (11th Cir. 2009)(inmate has no right to counsel with respect to motion to reduce lawful sentence).

cancer, amyotrophic lateral sclerosis (ALS), end-
stage organ disease, and advanced dementia.

(ii)       The defendant is —

  (I)     suffering from a serious physical or
medical condition,

  (II)    suffering from a serious functional or
cognitive impairment, or

  (III)   experiencing deteriorating physical or
mental health because of the aging process,

that substantially diminishes the ability of the defendant
to provide self-care within the environment of a
correctional facility and from which he or she is not
expected to recover.

  (B)   **Age of the Defendant.** — The defendant (i) is
at least 65 years old; (ii) is experiencing a
serious deterioration in physical or mental
health because of the aging process; and (iii)
has served at least 10 years or 75 percent of his
or her term of imprisonment, whichever is less.

  (C)   **Family Circumstances.** —

(i)  The death or incapacitation of the caregiver
of the defendant's minor child or minor children.

(ii)       The incapacitation of the defendant's
spouse or registered partner when the defendant
would be the only available caregiver for the
spouse or registered partner.

  (D)   **Other Reasons.** — As determined by the
Director of the Bureau of Prisons, there exists
in the defendant's case an extraordinary and

9

compelling reason other than, or in combination
with, the reasons described in subdivisions (A)
through (C).

Application Note 2 adds that "an extraordinary and
compelling reason need not have been unforeseen at the time of
sentencing in order to warrant a reduction in the term of
imprisonment."

For its part, consistent with Application Note 1(D), BOP
recently promulgated Program Statement 5050.50, available at
https://www.bop.gov/policy/progstat/5050_050_EN.pdf.  This
Program Statement, which took effect on January 17, 2019, set
forth BOP's evaluation criteria for compassionate release after
the First Step Act.  Program Statement 5050.50 contains
standards that are both more extensive than and slightly
different from those stated in § 1B1.13.

The current Program Statement contains guidelines and
procedures for implementing the compassionate release amendments
of the First Step Act relating to Requests Based on Medical
Circumstances (Section 3); Requests Based on Non-Medical
Circumstances – Elderly Inmates (Section 4); Requests Based on
Non-Medical Circumstances – Death or Incapacitation of the
Family Member Caregiver (Section 5); and Requests Based on Non-
Medical Circumstances – Incapacitation of a Spouse or Registered
Partner (Section 6).  Notably, Program Statement 5050.50 does

not contain criteria for releasing an inmate for non-medical or non-exigent family circumstances.

**B.    Zullo Does Not Meet The Criteria For Release Under The First Step Act, The Sentencing Guidelines And BOP'S Program Statement**

In general, a defendant has the burden to show circumstances meeting the test for compassionate release. United States v. Heromin, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019). See generally United States v. Butler, 970 F.2d 1017, 1026 (2nd Cir. 1992)("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."). Zullo does not come close to qualifying under existing criteria.

In fact, under the Sentencing Commission's Policy Statements and BOP's implementing Program Statement, Zullo is not even eligible for compassionate release. As required by 28 U.S.C. § 994(t), the Sentencing Commission, in U.S.S.G. § 1B1.13, specified criteria to be considered in evaluating an application for compassionate release, and also provided specific examples. These criteria encompass situations involving an inmate's medical condition, age or family circumstances relating to the care for minor children, a spouse or other dependent. Zullo concedes that his case presents no

11

extraordinary and compelling reasons that fall within any of those parameters.

To be sure, § 1B1.13, Application Note 1(D) permits compassionate release in other, non-medical or non-family circumstances, but does so only "[a]s determined by the Director of the Bureau of Prisons."  As just noted, Program Statement 5050.50, amended expressly in light of the First Step Act, does not allow release in cases not presenting extraordinary health, age or family-related issues.  In a case like this one, then, as the Supreme Court made clear in Dillon, the Sentencing Commission's Policy Statement is binding on this court.  United States v. Shields, 2019 WL 2359231, at *4 (N.D.Cal. June 4, 2019).

Even if it were assumed that the First Step Act at least made Zullo eligible for compassionate release, there are abundant reasons why his application should be denied.  In the first place, compassionate release, even based on dire medical or family circumstances, should be a "rare" and "extraordinary" event.  United States v. Willis, 382 F.Supp.3d 1185, 1188-89 (D.N.M. 2019) (compiling cases; citations omitted); United States v. Johns, 2019 WL 2646663, at *2 (D.Az. June 27, 2019).  Where, as here, such special conditions are entirely absent, a motion for release should receive even more scrutiny.

Conspicuously absent from Zullo's motion is citation to even a single case where a district court even considered, much less granted, a compassionate release motion filed by an inmate who presented no extraordinary medical, age or family circumstance issues.  A compassionate release proceeding is not the venue in which a court should reconsider the wisdom or fairness of a sentence that became final years ago.

Zullo insists that "extraordinary and compelling" reasons for a sentence reduction can be found in circumstances surrounding the manner in which he was prosecuted.  First, he characterizes as "extraordinary" the 15-year sentence he received for a "first-time, non-violent drug offense."  Motion at 4.  In fact, the sentence Zullo received for engaging in a three-year-plus cocaine trafficking conspiracy, which involved pounds of narcotics and the possession of many firearms, was the lowest authorized by Congress.  Comparable sentences are imposed on similarly-situated defendants throughout this country on a daily basis.  The 180-month sentence was within the range prescribed under the Sentencing Guidelines even without reference to mandatory minimums.  In truth, there is nothing so exceptionally harsh about Zullo's sentence to make it an extraordinary outcome.

13

No more meritorious is Zullo's deriding of the Government's decision to appeal the illegal original sentence that granted him an undeserved windfall.  When Zullo pled guilty, he was fully aware a case was pending before the Supreme Court that could affect his case.  He nonetheless decided to plead guilty and take his chances.  Zullo knew the Government had a legal right to appeal his sentence, because Judge Murtha told him that after pronouncing sentence.  Oct. 19, 2010 Sentencing Tr. 34. In settling Zullo's case, the Government insisted that he plead guilty to crimes that, in the prosecutor's estimation, required imposition of a 15-year sentence.  Zullo agreed to that bargain. The Government's decision to appeal the illegal sentence was no more "absurd" – or "extraordinary" -- than Zullo's own decision to appeal from his resentencing.

Zullo suggests Congress' passage of the First Step Act in 2018 is itself an extraordinary event that a court can take into account in evaluating a § 3582(c)(1)(A) motion.  This argument is a non-sequitur.  To urge that the mere passage of the Act is a circumstance that qualifies an inmate for release is to invite every disgruntled federal prisoner (of which there are surely many), regardless of circumstances, to seek a reduced sentence. Clearly, this is not what Congress contemplated.  What Congress did intend was to expand the circumstances in which deserving

14

inmates could seek judicial review of applications for compassionate release, under standards set by Congress, by the Sentencing Commission and the Bureau of Prisons.  See, e.g., United States v. Fox, 2019 WL 3046086, at 3 (D.Me. July 11, 2019)("The First Step Act did not change the statutory criteria for compassionate release, but it did change the procedures, so that the Bureau of Prisons is no longer an obstacle to a court's consideration of whether compassionate release is appropriate."); Willis, 382 F.Supp.3d at 1187 (same).

Zullo points to the strides he has taken, since being incarcerated, to take advantage of prison programming and to better himself as a citizen.  But as Zullo himself recognizes (Motion at 9), Congress has decreed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" to reduce a lawful sentence.  28 U.S.C. § 994(t).

In his amended motion, Zullo adds another assertedly extraordinary circumstance meriting § 3582(c) relief:  the Government's alleged breach of the plea agreement by appealing his original, unlawful sentence.  Of course, Zullo had ample opportunity, either during the Government's appeal, or after, during resentencing proceedings, to challenge any alleged breach.  But Zullo did not do so.  And then, when Zullo finally

did raise the claim in 2018, he forfeited it by not seeking authorization from the Court of Appeals to file a successive § 2255 petition.  In light of these omissions, Zullo should not now be heard carping about prosecutorial misconduct in the context of a motion for sentence reduction.

In any event, there was no breach of the plea agreement. The Government never promised, or even hinted that, in exchange for Zullo's guilty plea, it would forego its statutory right to appeal an illegal sentence.  The language from the plea agreement that Zullo relies on in his amended motion – the recitation of maximum penalties the court "may" impose – was clearly intended only to comply with the guilty plea requirements of Fed.R.Crim.P. 11(b)(1)(H).  No reasonable interpretation of the plea agreement's language conferred on the district court (or, derivatively, Zullo) the unfettered and unappealable right to impose an illegal sentence.

In sum, after knowingly and voluntarily pleading guilty to charges that potentially exposed him to at least 15 years in federal prison, Zullo received the lowest sentence permitted by law.  The conviction and sentence have been affirmed on appeal and upheld on collateral attack.  The sentence Zullo received is long, and the procedural course of his prosecution was a bit unusual.  Undoubtedly, family and friends miss him.  However,

16

there is no basis in law for finding anything extraordinary or compelling about his plight.

**C.   Zullo Has Not Shown He Is Not A Danger**

Before releasing an inmate under § 3582(c)(1)(A), the court must determine that Zullo "is not a danger to the safety of any other person or to the community."  U.S.S.G. § 1B1.13(2).  The Government does not believe Zullo can make this showing.  He was convicted of a multi-year narcotics conspiracy in which 20 persons were charged.  His role in that conspiracy was not a minor or minimal one; rather, as the Presentence Report concluded, Zullo was a "primary distributor[]" for the conspiracy's leader.  PSR ¶ 23.  A cooperating witness observed Zullo with 4-5 handguns over the course of the conspiracy, PSR ¶ 29(d), and two pistols were recovered during searches of Zullo's home and car.  PSR ¶ 33.  During a traffic stop, a Rutland Police Officer found a .38 caliber revolver in Zullo's waistband; it was loaded with hollow-point ammunition.  Zullo told the officer, "you never know when someone may jump you or may need it, it's not illegal is it."  PSR ¶ 28.  In one of the counts of conviction, Zullo admitted that he possessed a firearm in furtherance of the drug conspiracy, a circumstance that sharply increased the likelihood that violence would occur.  He is today only 30 years old; nothing about his age or physical

17

condition thus mitigates the risk posed by Zullo's criminal conduct.

Indeed, statistics compiled by the U.S. Sentencing Commission confirm that Zullo is at high risk of reoffending. According to the Commission's June 2019 Report on "Recidivism Among Federal Firearms Offenders," more than 52% of persons who had previously been convicted of a § 924(c) firearms offense were subsequently rearrested, a recidivism rate that was significantly higher than for non-firearms offenders.  Report at 17, 39.  Even for firearms defendants who were in criminal history category I (like Zullo), the recidivism rate remained very high (37.6%).  Report at 42.  Perhaps more tellingly, Zullo is now age 30 and the rearrest rate for firearms offenders who were between ages 26 and 30 at the time of release was a staggeringly high 69.7%.  Report at 43.  Given these grim figures, no judge can confidently predict that Jeremy Zullo, if released immediately, would not pose a danger to the community.

D.   **Section 3553(a) Factors**

In assessing a § 3582(c)(1)(A) motion, the court must take into account, to the extent they are pertinent, the statutory sentencing factors set forth in § 3553(a).  The Government submits that consideration of those factors in no way demonstrates an "extraordinary" of "compelling" circumstance

18

justifying release far in advance of the expiration of Zullo's lawful term of imprisonment.

## CONCLUSION

Jeremy Zullo's motion for compassionate release should be denied.

Dated at Burlington, in the District of Vermont, August 13, 2019.

Respectfully submitted,

UNITED STATES OF AMERICA

CHRISTINA E. NOLAN
United States Attorney

By:

GREGORY L. WAPLES
Assistant U.S. Attorney
P.O. Box 570
Burlington, VT 05402-0570
(802) 951-6725
Gregory.Waples@usdoj.gov